UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEO FINANCE, LLC,

        Plaintiff,                                Case Number 13-14299
v.                                                    Honorable David M. Lawson

UNIVERSITY SQUARE 2751, LLC,

        Defendant,

and

UNIVERSITY SQUARE 2751, LLC,

        Third-party Plaintiff,
v.

FIRST AMERICAN TITLE
INSURANCE AGENCY,

        Third-party Defendant.

_____/

**OPINION AND ORDER GRANTING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS, DISMISSING THIRD-PARTY COMPLAINT, AND DENYING MOTION TO STRIKE THIRD-PARTY PLAINTIFF'S COUNSEL'S AFFIDAVIT**

The main dispute in this case is whether defendant University Square 2751, LLC is liable to the plaintiff for a geothermal water supply system, which had been installed on premises that University Square subsequently acquired following foreclosure proceedings.  University Square contests its obligation to pay for the equipment or for the water service; but it maintains that if it is liable, all damages must be paid by its title insurer, third-party defendant First American Title Insurance Agency.  Presently before the Court is First American's motion to dismiss the third-party complaint, in which it argues that as a matter of law, it cannot be liable under its title policy.  It reasons that if the equipment is deemed to be a fixture for which the plaintiff failed to record its

interest, the plaintiff cannot assert a claim against a good faith purchaser without notice. If University Square had no notice, the reasoning goes, it has no liability and there is no obligation for First American to indemnify. And if University Square had notice of the plaintiff's installation, there is no coverage under the plain terms of a policy exception. Finally, if the plaintiff's equipment is deemed to be personal property, First American's title policy is not implicated in any way. University Square responded to the motion by raising issues that extend beyond the pleadings. The Court allowed supplemental briefs to see if the dismissal motion should be converted to a summary judgment motion. After reviewing the submissions, the Court finds merit to First American's arguments, which compel the conclusion that the third-party complaint fails to state a viable claim against First American. Therefore, First American's motion to dismiss will be granted.

I.

The claims in this case are based on a contract between certain parties, none of whom are part of the present lawsuit. According to the original complaint, on October 29, 2001, Hardin Geotechnologies, Inc. executed two "Geoexchange Water Supply Agreements" with U-Square Associates, L.P., under which Hardin agreed "to design, construct and maintain geothermal wells, pipes, pumps, metering equipment, and related infrastructure ("Geothermal Equipment") necessary to operate a geoexchange water supply system that provided sufficient water to heat and cool two office buildings located at 2751 and 2761 E. Jefferson Ave. Detroit, Michigan 48207." Compl. ¶¶ 5-6. The agreement required U-Square to pay a monthly fee to Hardin based on metered water usage, and stated that all of the installed equipment would remain the property of Hardin. U-Square evidently had an option under the agreement to purchase the equipment, but it never exercised that option.

On September 30, 2010, Hardin defaulted on loans that it owed to its lender Old National Bank. Subsequently, plaintiff GEO Finance, LLC put together a funding package under which it paid off the defaulted Old National Bank loans in exchange for acquiring all of Hardin's assets, including all of its rights and obligations relating to the geothermal equipment. According to GEO Finance, "[f]rom June 1, 2011 through October 2012, GEO Finance was paid for the monthly usage of the Geothermal Equipment by the owner of the property, just as U-Square had paid Hardin since 2001." Compl. ¶ 12.

In October 2012, the property was foreclosed and sold at a sheriff's sale. Subsequently, the purchaser at the sheriff's sale sold the property to defendant University Square. GEO Finance contends that it had no notice of the foreclosure or sheriff's sale, that since University Square acquired the property it has received no payments under the geothermal equipment agreement, and that University Square has refused even to allow meter readers on the property to record metered water usage, despite the fact that the equipment continues to be used to heat and cool the office buildings. GEO Finance alleges that University Square owes it more than $50,000 for use of the equipment, and that this sum continues to increase at an estimated rate of $5,000 per month. GEO Finance also asserts that the fair market value of its equipment exceeds $200,000, and that University Square has illegally converted all of the equipment to its own use by refusing either to make required payments or to surrender it.

On June 12, 2012, third-party defendant First American issued to University Square a title insurance policy covering the property at 2751-2761 East Jefferson Avenue, Detroit, Michigan. As noted above, on October 29, 2012, University Square completed its purchase of the East Jefferson property, after it had been foreclosed and sold at the sheriff's sale. The title policy's "Covered

Risks" section states that it insures against "[a]ny defect in or lien or encumbrance on the Title," including any "defect in the Title caused by . . . (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform these acts by electronic means authorized by law . . . ." Third Party Compl., Ex. A, Policy at 1.

University Square alleges in its third-party complaint that "[t]he title work showed no interest in the Property (either real or personal) that was filed by Plaintiff GEO Finance, or its predecessor in interest." Third Party Compl. ¶ 12, Ex. A. University Square also alleges in the third-party complaint — as it contends in its defense to the original complaint — that the geothermal equipment "is completely integrated into the Property (wall, ground, and ceiling), and is actually a 'fixture.'" Third Party Compl. ¶ 16. University Square asserts that it had no notice of any lien or leasehold interest relating to the equipment before it bought the property.

When the original complaint was filed, University Square submitted a claim for coverage under the policy to First American and requested that the insurer defend University Square according to its obligations under the policy. First American denied the claim, explaining:

> The Complaint that was filed by GEO Finance, LLC, contains counts for conversion, unjust enrichment, and breach of contract. None of these counts are covered under the insuring provisions of the policy, and [they] are outside the scope of the policy.
>
> Although there is no coverage for this matter it is important to understand that even if an argument could be made that the matter is within an insuring provision, the insuring provisions are subject to the remaining terms of the policy. Schedule B of the policy provides that:
>
>> This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:
>>
>> 1. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

> The presence of the equipment owned by GEO Finance, LLC was not shown by the public records but could have been ascertained by an inspection of the land. As such, this matter is expressly excepted from coverage.
>
> Additionally, the Exclusions from Coverage as listed in the Policy provide that:
>
>> The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
>>
>> 3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed, or agreed to by the Insured Claimant.
>
> The attached Bill of Sale from the time of the transaction provides that any personal property was quit claimed to University Square 2751 LLC "as is" by the assignor who "specifically disclaims any warranty, guaranty or representation, oral or written, past or present, express or implied, concerning the personal property or assignor's title thereto. Assignee is hereby thus acquiring the personal property based solely upon assignee's own independent investigations and inspections of that property and not in reliance upon any information provided by assignor or assignor's agents or contractors." This document was signed by the managing member of University Square 2751 LLC in October 2012. As such, this is a matter that was agreed to by the insured, and is expressly excluded from coverage under the policy.
>
> For the foregoing reasons, your claim to First American Title Insurance Company is respectfully denied.
>
> If you are aware of facts or an interpretation of the policy which would alter this conclusion, please provide that information to me in writing at your earliest convenience. Although the reasons stated above are sufficient to deny the claim, they are not intended to be exclusive. First American Title Insurance Company reserves the right to establish additional grounds for denial should a further review of the file become[] necessary.

Compl. ¶ 19, Ex. C, Letter (Dec. 2, 2013) at 1-2. Although not cited specifically in First American's letter, Schedule B of the policy also excludes from coverage any claim for "costs, attorney's fees, or expenses that arise by reason of," any "[e]asements, liens or encumbrances, or claims thereof, not shown by the Public Records," Third-Party Compl., Ex A, Policy Schedule B ¶ 2, which the parties refer to as "Exception 2."

On October 20, 2013, plaintiff GEO Finance, LLC filed its complaint against defendant University Square, raising claims for conversion (count I), unjust enrichment (count II), and breach of contract (count III). On January 6, 2014, University Square filed an answer and a third-party complaint against third-party defendant First American. The third-party complaint raises claims for indemnity (count I) and contribution (count II), and seeks a declaratory judgment compelling First American to fulfill its duty to defend University Square in the primary action. First American responded with a motion to dismiss. The Court heard oral argument on the motion on May 29, 2014. The parties were granted permission to file supplemental briefs, which have been received. The motion is now ready for decision.

II.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true,

'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements' " of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can " 'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 -n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the

pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36. If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be considered without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not its associated documents). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

A.

The parties agree that First American issued an insurance policy that protected University Square against any defects in the title to its property, with certain exceptions. The question presented here is whether anything in plaintiff GEO Finance's complaint against University Square triggers any obligation by First American to either defend the lawsuit on behalf of University Square, or pay damages to GEO Finance if University loses.

Under Michigan law, the typical insurance contract imposes two distinct duties on the insurer: the duty to defend and the duty to indemnify. *Mich. Ed. Employees Mut. Ins. Co. v. Turow*, 242 Mich. App. 112, 116-17; 617 N.W.2d 725, 728 (2000). Of the two, the duty to defend is broader. *Auto-Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15, 521 N.W.2d 480, 487 (1994). The duty to defend is defined by first looking to the policy to determine the scope of coverage, *Arco Industries Corp. v. American Motorists Ins. Co.*, 448 Mich. 395, 402, 531 N.W.2d 168, 172 (1995),

and then examining the complaint to see "if the allegations of the underlying suit arguably fall within the coverage of the policy," *Royce v. Citizens Ins. Co.*, 219 Mich. App. 537, 542-43, 557 N.W.2d 144, 146-47 (1996) (citing *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 207 Mich. App. 60, 67, 523 N.W.2d 841, 844 (1994), *aff'd* 452 Mich. 440, 550 N.W.2d 475 (1996)).

Although broad, the duty to defend is not without limits; the insurer is not obligated to defend an insured against claims that plainly would be excluded from coverage under the policy. "'The insurer is not required to defend the insured against claims expressly excluded from coverage in the policy. The exception in the policy is a part of the contract between the parties.'" *Ginger v. Am. Title Ins. Co.*, 29 Mich. App. 279, 284, 185 N.W.2d 54, 56 (1970) (quoting *Duval v. Aetna Casualty & Surety Company*, 304 Mich. 397, 401, 8 N.W.2d 112, 114 (1943)). Where the underlying action is "founded upon a defect not covered by the policy of insurance, it necessarily follows that [the insurer [does] not breach its duty to defend in refusing to appear. Rather, under the circumstances, [the] insurance company [has] no duty at all." *Ibid.*

University Square has not articulated any set of facts upon which First American plausibly could be required to defend or indemnify its insured, regardless of the outcome of the underlying case. Nothing in GEO Finance's complaint against University Square is based on a defect in the title to the property; instead it alleges claims for conversion, unjust enrichment, and breach of contract. As First American points out, it does not matter whether the geothermal equipment is determined to be "fixtures" or personal property. Either way, under the plain terms of the title insurance policy, the coverage clauses are not implicated.

First, if the "equipment" described in the complaint is found to be personal property, then there is no set of facts under which the claims raised in the complaint could implicate any duty to

-9-

defend or indemnify, because by its plain terms the coverage under the policy is limited to losses attributable to a "defect in or lien or encumbrance on" the title to the real property. So far as the original complaint goes, it does not assert any claim on the real property that University Square purchased at all, but only alleges that the defendant illegally has converted "equipment" present on the property to its own use, or has been unjustly enriched by its use and retention of that equipment, absent the payment of contractually required metered usage fees. University Square has not alleged any facts in its third-party complaint to establish that it has suffered from "[a]ny defect in or lien or encumbrance on the Title." Third Party Compl., Ex. A, Policy at 1.

University Square attempts to paint its claim as one for injury "caused by . . . (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform these acts by electronic means authorized by law," *ibid.*, focusing on isolated language in subsection (vi) and arguing that whatever interest GEO Finance had was not "properly recorded," because it never was recorded at all. But this argument ignores the fundamental premise for coverage, which is that the insured must establish some "defect in or lien or encumbrance on the Title." The original complaint contains no claim to quiet title, and the plaintiff has not alleged any facts in the complaint that could support any plausible claim of title to the real property on which the "equipment" is located. Moreover, University Square has not identified in or attached to its pleadings any "document" which it alleges was improperly recorded or which any involved party allegedly failed to record.

Second, if the geothermal equipment is found to be a "fixture," GEO Finance's interest in it would be a form of lien or encumbrance. It is true that "[u]nder Michigan's recording statutes, all subsequent owners or encumbrances take subject to recorded liens, rights, or interests." *Johnson Family Ltd. P'ship v. White Pine Wireless, LLC*, 281 Mich. App. 364, 392, 761 N.W.2d 353, 369

(2008) (citing Mich. Comp. Laws § 565.25(4)). But here, it is undisputed that no such interest was recorded before the property was purchased at the foreclosure sale. Any unrecorded interest "would be void against a subsequent purchaser in good faith for valuable consideration." *Ibid.* (citing Mich. Comp. Laws § 565.29). "Hence, if [the plaintiff was] a purchaser in good faith for valuable consideration, [the property] would not be subject to" any encumbrance, lien, or interest asserted by the plaintiff, if that interest was not recorded.

There appears to be no dispute that defendant University Square bought the property in good faith, for valuable consideration. In its third-party complaint, University Square asserts that it had no notice of any interest in the property claimed or held by plaintiff GEO Finance prior to the purchase. It appears undisputed that neither GEO Finance nor the original installer of the geothermal system ever filed any notice of any lien, lease, or other encumbrance upon the property relating to their interest in the equipment. Moreover, the original complaint contains no reference to any such filing, and the third-party plaintiff and third-party defendant, so far as their papers suggest, evidently agree that no such filing ever was made. Therefore, defendant University Square took title to the property free of any such interest in the fixtures. Based on the undisputed facts alleged in the pleadings and relied upon by the parties' in their briefing, there is no set of facts under which the claims in the original complaint or third-party complaint would "arguably fall within the coverage of the policy." *Royce v. Citizens Ins. Co.*, 219 Mich. App. 537, 542-43, 557 N.W.2d 144, 146-47 (1996).

B.

University Square also contends that First American has "waived" its right to present the defense that coverage is excluded under Exception 2 in the policy, relating to "[e]asements, liens

-11-

or encumbrances, or claims thereof, not shown by the Public Records." That argument is both unsound as a matter of law and unsupported by the undisputed facts shown in the pleadings.

Under Michigan law, in certain circumstances, an insurer's statement of particular defenses in a denial letter, coupled with the failure to cite other specific policy provisions, effects a waiver of its right to raise other, unstated defenses in later proceedings. *Bank of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x. 473, 477 (6th Cir. 2014) (citing *S. Macomb Disposal Auth. v. Mich. Mun. Risk Mgmt. Auth.*, 207 Mich. App. 475, 526 N.W.2d 3, 4 (1994); *LeDuff v. Auto Club Ins. Ass'n*, 212 Mich. App. 13, 536 N.W.2d 812, 815 (1995)). There are exceptions to this general rule, however. The application of waiver or estoppel is not appropriate where an insurer has expressly reserved its right to present additional defenses in a written denial. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 521 (6th Cir. 2002) ("[I]n its September 16, 1994 letter, Hartford expressly indicated that it 'reserved all rights and defenses available to it under the bond and applicable law' with regard to Claim II. The Court agrees with the district court that this waiver argument is meritless."). And even where an insurer neglects to reserve a specific defense in a formal denial letter, "Michigan law provides that waiver and estoppel are unavailable to broaden coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded." *City of Warren, Mich. v. Int'l Ins. Co. of Hannover, Ltd.*, 524 F. App'x 254, 260 (6th Cir. 2013) (citing *Kirschner v. Process Design Assocs.*, 459 Mich. 587, 593-94, 592 N.W.2d 707, 709-10 (1999)).

Here, in its denial letter, First American expressly "reserve[d] the right to establish additional grounds for denial should a further review of the file become[] necessary." In light of that reservation, it cannot reasonably be said that First American "intentionally relinquished" its right

to present the defense under Exception 2. *United States v. Willoughby*, 742 F.3d 229, 236 (6th Cir. 2014); *Hartford Underwriters*, 307 F.3d at 521. Moreover, First American did expressly reference the factual basis of the Paragraph 2 exclusion where it stated in the denial letter that "[t]he presence of the equipment owned by GEO Finance, LLC was not shown by the public records." That statement sufficed to inform the insured that First American intended to rely on the absence of any public record of the plaintiff's interest as a defense to the claim. In fact, in its third-party complaint University Square concedes that the coverage "denial was based on the allegation[] that . . . there was no public record of the interest alleged by [GEO Finance]." Third-Party Compl. ¶ 20.

Additionally, because Michigan law does not permit the concepts of waiver and estoppel to compel the insurer to indemnify or defend against claims that plainly lie outside the policy's scope of coverage, *Kirschner*, 459 Mich. at 593-94, 592 N.W.2d at 709-10, University Square cannot rely on this argument to force First American to defend this lawsuit. University Square does not appear to argue with any serious force that coverage is not expressly excluded under "Exception 2." Accepting its waiver argument would impose on the insurer "a liability not created by the contract and never assumed by the defendant under the terms of the policy." *Id.* at 459 Mich. at 594, 592 N.W.2d at 710.

C.

Finally, University Square argues that Exception 2 "should have been deleted" from the policy, relying on an affidavit from its attorney and a purchase agreement that it attached as exhibits to its response, but which were not attached as exhibits to the pleadings or incorporated by reference in the complaint. That argument is the focus of the supplemental briefs, which the Court permitted

-13-

after considering whether the motion to dismiss should be converted to a motion for summary judgment under Rule 12(d).

Even with the benefit of supplemental briefing, however, University Square has not pointed to anything in the pleadings or elsewhere to suggest that the Exception 2 *was* deleted. Nor is there any doubt that the copy of the policy that was attached to the complaint fully and faithfully represents the terms of the contract of insurance that existed between the parties. In fact the third-party complaint alleges that "[t]he Policy [attached as Exhibit A] was in effect, by its terms, and afforded University Square insurance against liability in accordance with the terms, conditions, limitations, and amounts defined in the Policy." Third-Party Compl. ¶ 9.

The exhibits submitted with University Square's supplemental brief include the purchase agreement and seller's affidavit from the sale. First American asserts that the hotly disputed "Exception 2" that was the subject of the supplemental briefing was not deleted from the policy because the seller's affidavit did not address "matters not disclosed in the public records." University Square does not dispute that the affidavit on its face fails to address the public records exception, but it maintains that First American must have found the affidavit to be "sufficient" in the sense contemplated under the purchase agreement, because it deleted two other exceptions that were addressed in the affidavit. Perhaps, but University Square still admits that Exception 2 was not deleted.

Moreover, regardless of whatever obligation the seller had to deliver a "sufficient" affidavit, First American was not obligated to do anything under the purchase agreement other than to handle the escrow funds, and it did not assume any obligation to do anything related to deleting exceptions. First American asserts — and the third-party plaintiff does not dispute — that the buyer was

-14-

unrepresented at the closing and failed to ask for a "marked up" title commitment at the closing, which would have disclosed that the policy was going to issue with Exception 2 still included, due to the insufficiency of the owner's affidavit. First American argues that any failure to supply a sufficient affidavit was a breach by the seller of the agreement with the buyer, and that breach did not create any duty on the title insurer's part to accept an insufficient affidavit or to delete an exception that was not covered by the affidavit.

Finally, in its supplemental brief, University Square raises a new argument that coverage may exist because its title is "unmarketable" as a result of the claims by the plaintiff in this case. In support, it offers an affidavit by its attorney that it tried to sell the property, but the buyer "declined to purchase" because of those claims. That affidavit provoked a motion by First American to strike. However, the affidavit does not amount to evidence of an unmarketable title. It suggests at most that a prospective buyer did not want to become entangled in the dispute over the geothermal water supply system. And it does not alter the fact that the scope of coverage in the title policy does not extend to personal property or unrecorded interests in fixtures.

### III.

After reviewing the parties' submissions, it is apparent that none of the allegations in the complaint trigger any obligation by First American to either defend the present lawsuit on behalf of University Square, or pay any of the damages claimed by GEO Finance against University Square.

Accordingly, it is **ORDERED** that the motion to dismiss by third-party defendant First American Title Insurance Agency [dkt # 14] is **GRANTED**.

It is further **ORDERED** that the third-party complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion to strike the affidavit of third-party plaintiff's counsel [dkt/ #23] is **DENIED as moot**.

                                              s/David M. Lawson  
                                              DAVID M. LAWSON  
                                              United States District Judge

Dated:   December 29, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 29, 2014.

                              s/Susan Pinkowski  
                              SUSAN PINKOWSKI